

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-15-00031-CV
_____

THO Q. PHAM, APPELLANT

V.

JASON BRYAN CARRIER, STEPHEN BRADLEY WOMACK,
MICHAEL CHADWICK PICKELSIMER AKA MICHAEL
CHADWICK WOMACK, HMP PARTNERS MANAGEMENT, INC.,
AND CARMACK PROPERTIES, LLC, APPELLEES

_____

On Appeal from the 126th District Court
Travis County, Texas
Trial Court No. D-1-GN-13-003813, Honorable Gisela D. Triana, Presiding

_____

April 3, 2017

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant Tho Q. Pham appeals from the trial court's take-nothing summary judgment order granting summary judgment in favor of appellees. We will reverse the court's judgment in part and affirm it in part.

Background

Pham, Jason Bryan Carrier and Stephen Bradley Womack were the members of a Texas limited liability company, Austin Barfish, LLC ("Barfish"), which owned and operated Chuggin' Monkey, a bar on Sixth Street in Austin. Pham brought suit in November 2013 after he learned Carrier and Womack had caused Barfish to convey the bar in late 2005 to another entity, Carmack Properties, LLC. Carmack was formed by Carrier and Womack, and did not include Pham. His suit asserted fraud, breach of fiduciary duty and other claims. He sought relief that included monetary and exemplary damages, a 40% interest in the existing Chuggin' Monkey bar and interests in "spinoff" bars, an accounting and attorney's fees.[1]

Summary judgment evidence showed that after a 2002 re-organization of Barfish, Carrier and Womack owned a combined 60% interest and Pham 40%. The bar opened that year. During 2002 and 2003, Pham received some cash distributions from Barfish. He left Austin sometime in 2004 and moved to Houston. His summary judgment evidence shows he told Carrier and Womack to retain his share of profits in the company. Pham had no communication with Carrier or Womack from the time he left Austin until he had lunch with Carrier in early 2011.

Appellees filed special exceptions to some of Pham's claims, and made the court aware that a certificate of termination[2] had been filed for Barfish on September 30,

---

[1] The defendants, appellees in this Court, were Carrier, Womack, Michael Chadwick Pickelsimer a/k/a Michael Chadwick Womack, Conrad Properties, LLC, HMP Partners Management Inc. and Carmack Properties, LLC.

[2] *See* TEX. BUS. ORGS. CODE ANN. § 11.101 (West 2015).

2010.  Appellees also filed a motion for summary judgment, asserting no-evidence and traditional grounds, including limitations.

After a hearing, the court sustained appellees' special exceptions to Pham's causes of action for majority oppression of a minority member, conversion of his membership interest and breach of fiduciary interest owed to him individually, and dismissed those causes of action with prejudice.

The day before a scheduled later hearing on appellees' motion for summary judgment, Pham filed his second amended petition in which he plead, for the first time, derivative claims on behalf of Barfish, alleging fraud and unjust enrichment.  In this petition Pham also sought, both individually and derivatively, revocation of Barfish's termination under section 11.153 of the Texas Business Organizations Code.[3]  *See* TEX. BUS. ORGS. CODE ANN. § 11.153 (West 2015).

The trial court held the hearing as scheduled, and took the summary judgment motion under advisement.  It later signed a final judgment ordering that Pham take nothing on his remaining claims.  This appeal followed.

Standard of Review

We review a summary judgment *de novo.  Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,* 289 S.W.3d 844, 848 (Tex. 2009).  In a traditional motion for summary

---

[3] Appellees objected to the filing of Pham's second amended petition.  As appellees' brief acknowledges, the record does not reflect an express ruling on their objection to the amended petition, and the court's final judgment says the trial court considered "the other pleadings and papers on file herein," language the Supreme Court has found sufficient to invoke the presumption that the trial court considered the amended pleading.  *See Goswami v. Metropolitan Sav. and Loan Ass'n*, 751 S.W.2d 487, 490 (Tex. 1988).

judgment, the movant has the burden to demonstrate that no genuine issue of material fact exists and it is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548-49 (Tex. 1985); TEX. R. CIV. P. 166a(c). We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009), citing TEX. R. CIV. P. 166a(i). To defeat a no-evidence summary judgment, the nonmovant is required to produce evidence that raises a genuine issue of material fact on each challenged element of its claim. *Gish,* 286 S.W.3d at 310 (citations omitted); *see also* TEX. R. CIV. P. 166a(i).

In reviewing both traditional and no-evidence summary judgments, we consider the evidence in the light most favorable to the nonmovant. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *20801, Inc. v. Parker,* 249 S.W.3d 392, 399 (Tex. 2008). We credit evidence favorable to the nonmovant if reasonable jurors could, and disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort,* 289 S.W.3d at 848; *Gish,* 286 S.W.3d at 310; *Nixon,* 690 S.W.2d at 548-49. Further, every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon,* 690 S.W.2d at 548-49. When, as here, the trial court does not specify the grounds for its ruling, we must affirm its summary judgment if any ground on which judgment was sought is meritorious. *Merriman v. XTO Energy, Inc.,* 407 S.W.3d 244, 248 (Tex. 2013); *Burge v. Ocwen Loan Servicing, LLC,* No. 03-14-00135-CV, 2016 Tex. App. LEXIS 5634, at *3 (Tex. App.—Austin May 27, 2016, no pet.) (mem. op.) ("When the trial court does not state the basis for granting summary judgment, the appealing party must negate all possible grounds that could form the basis of that ruling").

4

Issues

Pham brings four issues on appeal, one asserting appellees' motion for summary judgment did not address all the causes of action on which summary judgment was granted; two issues addressing the statute of limitations grounds appellees asserted; and the other issue addressing appellees' no-evidence grounds challenging the merits of some causes of action.

Issue One – Summary Judgment on Claims Not Challenged in Summary Judgment Motion

By his first issue, Pham contends summary judgment on his individual and derivative claims seeking revocation of Barfish's termination under Business Organizations Code section 11.153 and his derivative claims on Barfish's behalf for fraud and unjust enrichment was improper because they were not addressed in appellees' motion for summary judgment.

As a general rule, a trial court commits reversible error by granting summary judgment on a claim not addressed in the summary judgment motion. *G & H Towing Co. v. Magee,* 347 S.W.3d 293, 297 (Tex. 2011) (per curiam). The error is harmless, however, "when the omitted cause of action is precluded as a matter of law by other grounds raised in the case." *Id.* at 298; *see Tarr v. Lantana Sw. Homeowners' Ass'n,* No. 03-14-00714-CV, 2016 Tex. App. LEXIS 13372 (Tex. App.—Austin December 16, 2016, no pet.) (mem. op.).

As noted, Pham plead his revocation-of-termination claim and his derivative fraud and unjust enrichment claims in his second amended petition, filed after appellees' motion for summary judgment, and appellees acknowledge their motion did not

5

"specifically" address those claims. They assert any error in granting summary judgment on the claims nevertheless was harmless, for two reasons: first, the grounds asserted in the motion show Pham could not recover on the omitted claims; and second, his request for revocation of Barfish's termination is a remedy, not an independent cause of action.

We begin with appellees' second contention, that Pham's request for revocation of Barfish's termination, brought pursuant to section 11.153, is a request for a remedy, not the assertion of a cause of action.[4] A review of appellees' motion for summary judgment and their reply to Pham's response to the motion reveals no mention of section 11.153.

Appellees' motion for summary judgment anticipated that Pham would amend his pleadings to assert derivative claims, and the motion contained a contention that any cause of action asserted on behalf of Barfish survived only for three years after the effective date of its termination, under Business Organizations Code section 11.356. TEX. BUS. ORGS. CODE ANN. § 11.356. The motion did not address, however, the impact, if any, that revocation of an entity's termination under section 11.153 might have on the operation of section 11.356. We cannot agree that appellees have shown that

---

[4] Section 11.153, entitled, "Court Revocation of Fraudulent Termination," reads:

Notwithstanding any provision of this code to the contrary, a court may order the revocation of termination of an entity's existence that was terminated as a result of actual or constructive fraud. In an action under this section, any limitation period provided by law is tolled in accordance with the discovery rule. The secretary of state shall take any action necessary to implement an order under this section.

TEX. BUS. ORGS. CODE ANN. § 11.153.

6

grounds they raised with the trial court preclude Pham's section 11.153 revocation-of-termination claim as a matter of law. Appellees' contention section 11.153 establishes only a remedy and not a cause of action was not argued to the trial court, and we express no opinion on the question. It suffices for our present purpose merely to state that appellees have not shown by that reasoning that the trial court's grant of summary judgment on the section 11.153 request, though error, was harmless. *G & H Towing Co.,* 347 S.W.3d at 298.

We reach the same conclusion on the fraud and unjust enrichment claims Pham asserted derivatively on behalf of Barfish. The ground raised by appellees' summary judgment motion was the assertion all Pham's causes of action were barred by limitations. His second amended petition asserted Womack and Carrier owed fiduciary duties to Barfish. Appellees' summary judgment motion did not challenge that assertion, and did not address the impact fiduciary duties may have on the application of statutes of limitations. *See, e.g., Valdez v. Hollenbeck*, 465 S.W.3d 217, 230-31 (Tex. 2015); *S.V. v. R.V.,* 933 S.W.2d 1, 8 (Tex. 1996). We thus cannot agree the limitations grounds asserted in the motion were conclusively shown to preclude the derivative claims. Appellees have not demonstrated the trial court's grant of summary judgment on the unaddressed derivative claims was harmless error. *G & H Towing Co.,* 347 S.W.3d at 298.

Pham's issue one is sustained.

Issue Three—Continuing Tort

We next consider Pham's issues three and four, which address appellees' entitlement to summary judgment under the statutes of limitations. Pham's brief

7

complains of two injuries: (1) Carrier and Womack's private sale of the Chuggin' Monkey to Carmack, a company they owned and controlled, for less than fair market value; and (2) Carrier and Womack's distribution of Pham's share of profit to themselves. His response to appellees' motion for summary judgment correctly noted that the chronology relevant to appellees' limitations grounds "is basically undisputed," the parties instead disagreeing over "what dates are relevant to determine when limitations began to run." His response also acknowledged that his claims "had he known about them and had [appellees] not concealed them, would be barred by limitations."[5]

By his third issue, Pham asserts the summary judgment record raises a genuine issue of material fact on the "validity" of Barfish's 2005 sale of the bar to Carmack Properties, LLC. And, his reply brief asserts, "If the sale was invalid, Pham contends that Austin Barfish still owns the bar. And, if Austin Barfish still owns the bar, [a]ppellees' continuing diversion of the bar's profits is an act of conversion still occurring at the present." He asserts the same argument would apply to his claim for lost profits from breach of contract. For his assertion's effect on accrual of his causes of action and limitations, Pham relies on the concept of the continuing tort. "A continuing tort involves wrongful conduct inflicted over a period of time that is repeated until desisted, and each day creates a separate cause of action." *First Gen. Realty Corp. v. Maryland Cas. Co.*, 981 S.W.2d 495, 501 (Tex. App.—Austin 1998, pet. denied) (citations omitted). A

---

[5] Claims for breach of contract and fraud must be brought "not later than four years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a) (fraud); TEX. CODE CRIM. PROC. ANN. § 16.051; *see Exxon Corp. v. Emerald Oil & Gas Co., L.C.,* 348 S.W.3d 194, 203 (Tex. 2011) (breach of contract and fraud). Claims for conversion must be brought within two years. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (West 2015).

cause of action for a continuing tort does not accrue until the tortious act ceases. *Id.* But the mere continuation of damages after a wrongful act does not prevent the running of imitations. *Id.* at 502; *see Rogers v. Veigel Inter Vivos Trust No. 2,* 162 S.W.3d 281, 290 (Tex. App.—Amarillo 2005, pet. denied) (drawing distinction between repeated injury proximately caused by repetitive wrongful conduct and continuing injury arising from one wrongful act).

To raise a fact issue on the validity of sale of the bar, Pham points to evidence the individual, Brian Scofield, who signed sale documents for Barfish, had previously been a Barfish member and manager, but had transferred his interest to Pham in 2002 and was not a manager or member in 2005. He notes also that Carmack was not formed until January 10, 2006, after the December 31, 2005 effective date of the bar sale. And Pham relies on evidence of Carrier and Womack's failures to follow the disclosure provisions of Business Organizations Code section 101.255 with respect to the sale of the bar, which was Barfish's only asset, to Carmack. TEX. BUS. ORGS. CODE ANN. § 101.255.

Regardless of the propriety of sale of the bar to Carmack, however, it is undisputed that Carmack took possession of the bar in January 2006 and operated it thereafter. We agree with appellees the transfer that caused Pham's legal injury, if any, was complete in January 2006. As this Court noted when faced with a continuing tort assertion in *Rogers*, the injury the plaintiff asserted may have been continuing, but "it arose from a single act of usurpation." 162 S.W.3d at 290. The same is true here. While Pham may have suffered some continuing injury, all the injuries he alleges arise

9

from the asset sale. We find the continuing tort doctrine inapplicable to Pham's individual claims, and so overrule his third issue.

Issue Four – Discovery Rule and Fraudulent Concealment

We next address Pham's fourth issue, by which he contends the trial court erred by granting summary judgment because, he argues, the summary judgment record raises genuine issues of material fact concerning the application of the discovery rule and the doctrine of fraudulent concealment. Because we have determined in our consideration of Pham's first issue that appellees' summary judgment motion did not address Pham's derivative claims brought on behalf of Barfish or his revocation-of-termination action, we here consider only the claims Pham plead individually for breach of contract, fraud and conversion. In his response to appellees' motion for summary judgment, Pham acknowledged the trial court "has already ruled" that appellees did not owe Pham fiduciary duties individually.[6] He does not challenge that ruling of the trial court on appeal. We therefore analyze this fourth issue under the law applicable to parties who are not fiduciaries.

Unless an accrual date is prescribed by statute, "[c]auses of action accrue and statutes of limitations begin to run when facts come into existence that authorize a claimant to seek a judicial remedy." *Valdez*, 465 S.W.3d at 229 (quoting *Exxon Corp.,* 348 S.W.3d at 202). The general rule is that a breach of contract action accrues immediately on the breach. *Barker v. Eckman*, 213 S.W.3d 306, 311 (Tex. 2006). With regard to conversion actions, "the general rule is that limitations begin to run at the time

---

[6] Recall, the trial court dismissed Pham's individual claim for breach of fiduciary duty on appellees' special exception.

of the unlawful taking." *Rogers v. Ricane Enters.,* 930 S.W.2d 157, 166 (Tex. App.—Amarillo 1996, writ denied) (citing *Republic Supply Co. v. French Oil Co.,* 392 S.W.2d 462, 464-65 (Tex. App.—El Paso 1965, no writ)).

Discovery Rule

*Breach of Contract and Conversion*

The discovery rule provides a "very limited exception to statutes of limitations." *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 929 (Tex. 2011) (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 455 (Tex. 1996)). Where it applies, the discovery rule defers accrual of a cause of action until the injury was or reasonably could have been discovered. *Valdez*, 465 S.W.3d at 229 (citation omitted); *see Cosgrove v. Cade*, 468 S.W.3d 32, 36 (Tex. 2015) (discovery rule "defers accrual of a claim until the injured party learned of, or in the exercise of reasonable diligence should have learned of, the wrongful act causing the injury"). The rule applies when the nature of the injury is inherently undiscoverable and the injury itself is objectively verifiable. *HECI Exploration Co. v. Neel,* 982 S.W.2d 881, 886-87 (Tex.1998). An inherently undiscoverable injury is one that by its nature is unlikely to be discovered within the prescribed limitations period, despite the exercise of due diligence. *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734-35 (Tex. 2001) (citing *S.V.*, 933 S.W.2d at 7). Whether an injury is inherently undiscoverable is a legal question, decided on a categorical rather than case-specific basis. *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006) (per curiam). To answer the question, "the focus is on whether a *type* of injury rather than a *particular* injury was discoverable." *Id*. at 314 (citing *Wagner & Brown*, 58 S.W.3d at 736) (italics in original). We consider, then, whether Pham's injury is "the type of injury that

11

generally is discoverable by the exercise of reasonable diligence." *Wagner & Brown*, 58 S.W.3d at 735 (quoting *HECI Exploration*, 982 S.W.2d at 886).

With regard to claims based on contract, the Texas Supreme Court declined in *Via Net* to hold that the discovery rule can never apply to breach of contract claims. 211 S.W.3d at 314. But it noted that such cases should be "rare, as diligent contracting parties should generally discover any breach during the relatively long four-year limitations period provided for such claims." *Id.* at 315. It held the discovery rule inapplicable to defer accrual of the plaintiff's cause of action for breach of an agreement to provide additional-insured liability coverage. *Id.* at 311-312, 315.

In the course of its analysis, the court held that because contracting parties generally are not fiduciaries, "[t]hus, due diligence requires that each protect its own interests." *Id.* at 314. It further noted the exercise of due diligence may require a party to request from its contract partner information needed to verify the other's contractual performance. *Id. (citing Wagner & Brown,* 58 S.W.3d at 736; *HECI Exploration,* 982 S.W.2d at 886). Pointing out that a contracting party who responds to such a request with false information risks application of the doctrine of fraudulent concealment, it concluded, "[b]ut failing to even ask for such information is not due diligence." *Id.* (citations omitted); *see Seureau v. ExxonMobil Corp.,* 274 S.W.3d 206, 229 (Tex. App.—Houston [14th Dist.] 2008, no pet) (citing and applying *Via Net*).

In the absence of fiduciary duties, which as we have noted are not a part of our analysis of Pham's fourth issue, we find the court's description in *Via Net* of the requirements of due diligence applies to Pham's relationship with Carrier and Womack

in Barfish. Pham contends the sale of Barfish's bar to another entity that did not include him was an inherently undiscoverable injury.

In support of his contention, Pham asserts there was no publicly available evidence of the sale; he was not involved in the operation of the bar; he had told Carrier and Womack to hold his share of the bar's profits; and the bar continued to operate under the same name and at the same location.[7] We accept, for this purpose, the truth of Pham's assertions of fact. Nonetheless, we are unwilling to hold that the injury suffered by one of three Texas LLC members from the sale of all the assets of its operating retail business is inherently undiscoverable. The ease with which someone in Pham's position could have learned of the sale and his resulting exclusion from ownership preclude such a holding. *See Via Net*, 211 S.W.3d at 314; *Seureau*, 274 S.W.3d at 229. We agree with Pham's contention his injury was objectively verifiable by means of such evidence as Barfish's asset sale agreement with Carmack and Barfish's financial records. But his injury was not of the type to be inherently undiscoverable despite the exercise of reasonable diligence.

Pham plead the discovery rule, and on summary judgment it was appellees' burden to negate it. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex. 1999); *Ward v. Stanford*, 443 S.W.3d 334, 342 (Tex. App.—Dallas 2014, pet. denied). The summary judgment record demonstrates the discovery rule had no application to Pham's individual breach of contract and conversion claims. Appellees met their summary judgment burden to negate the rule's application to those individual claims. *See Pirtle v. Kahn*, 177 S.W.3d 567, 572 (Tex. App.—Houston [1st

---

[7] Pham also relies on evidence that Carmack did not obtain a liquor license until March 2007, and operated under Barfish's license until then.

Dist.] 2005, pet. denied) (defendant may negate discovery rule by showing that it does not apply).

*Fraud*

Pham's briefing of his fourth issue does not distinguish his fraud claim from his breach of contract and conversion claims. Limitations does not begin to run on a fraud claim until the fraud is discovered or the exercise of reasonable diligence would discover it. *Hooks v. Samson Lone Star, Ltd. P'ship,* 457 S.W.3d 52, 57 (Tex. 2015); *Computer Assocs,* 918 S.W.2d at 455-56; *see S.V.,* 933 S.W.2d at 4 (distinguishing deferral of accrual of causes of action for fraud from discovery rule).

In his reply brief's discussion of fraudulent concealment, Pham points to the holding in *Hooks* that "reasonable diligence is an issue of fact." 457 S.W.3d at 58 (citing *Estate of Stonecipher v. Estate of Butts*, 591 S.W.2d 806, 809 (Tex. 1979). As he notes also, however, the court in *Hooks* went on to state that in some circumstances the court nevertheless "can still determine as a matter of law that reasonable diligence would have uncovered the wrong." 457 S.W.3d at 58. We agree with appellees' contention that the exercise of reasonable diligence would have led Pham to discover that Barfish was no longer operating the Chuggin' Monkey after January 2006. "Reasonable diligence requires that owners of property interests make themselves aware of relevant information available in the public record." *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 928 (Tex. 2011). The summary judgment record contains Barfish's Texas franchise tax reports filed from 2003 through 2006. By September 2005, the report filed shows that

14

Pham had been removed as a manager of Barfish.[8]  Nor is an LLC member like Pham limited to the public record for information on the company's internal affairs.  The Business Organizations Code provides an LLC member the rights, on written request, to examine records the company is required to keep, including tax returns, and to receive a copy of certain records, again including tax returns.[9]  TEX. BUS. ORGS. CODE ANN. §§ 101.501, 101.502 (West 2015).[10]  And, for a party whose rights and interests are essentially contractual, like Pham's, the courts have found that one who has neglected even to inquire of the other contracting parties about contractual performance is not conducting himself with reasonable diligence.  *Via Net*, 211 S.W.3d at 314.  We find that concept particularly applicable to an absentee 40% business owner like Pham.  As a matter of law, outside the context of fiduciary duties, Pham would have been able to discover any fraud involved in Barfish's sale of the Chuggin' Monkey within the limitations period, by the exercise of reasonable diligence.

Fraudulent Concealment

We likewise find the present summary judgment record raises no issue of material fact regarding application of the doctrine of fraudulent concealment.

---

[8] Citing *Hooks*, 457 S.W.3d at 61, Pham's briefing asserts that the franchise tax reports were inconsistent and contained misleading information.  Even viewed in the light most favorable to Pham, however, the reports are clear on the absence of Pham's name.

[9] *Cf. Ritchie v. Rupe*, 443 S.W.3d 856, 882 (Tex. 2014) (shareholder's access to corporate records).

[10] Elsewhere in his briefing Pham contends that because Barfish had no written LLC regulations or a company agreement, the LLC provisions of the Business Organizations Code constitute the members' agreement.  He cites section 101.052(b) for the proposition. TEX. BUS. ORGS. CODE ANN. § 101.052 (West 2015). We need not address the contention, but note that if it is accurate, sections 101.501 and 101.502 also must be deemed a part of the members' agreement.

Fraudulent concealment is an equitable doctrine that, unlike the discovery rule, is fact-specific. *Shell Oil Co.,* 356 S.W.3d at 927. "Fraudulent concealment is an affirmative defense to the statute of limitations under which the plaintiff has the burden of coming forward with proof to support the allegation." *Weaver v. Witt,* 561 S.W.2d 792, 793 (Tex. 1977) (per curiam). "A party asserting fraudulent concealment must establish an underlying wrong, and that 'the defendant actually knew the plaintiff was in fact wronged, and concealed that fact to deceive the plaintiff.'" *BP Am. Prod. Co. v. Marshall,* 342 S.W.3d 59, 67 (Tex. 2011) (quoting *Earle v. Ratliff*, 998 S.W.2d 882, 888 (Tex. 1999)). If established, a defendant's fraudulent concealment of wrongdoing may toll limitations. *Kerlin v. Sauceda*, 263 S.W.3d 920, 925 (Tex. 2008).

"When a defendant is under a duty to make a disclosure but conceals the existence of a cause of action from the party to whom it belongs, the defendant is estopped from relying on the defense of limitations until the party learns of the right of action or should reasonably have discovered it." *Valdez,* 465 S.W.3d at 229-30 (citing *Borderlon v. Peck,* 661 S.W.2d 907, 908 (Tex. 1983)). The estoppel effect does not last indefinitely, however, but ends when the party "learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to the discovery of the concealed cause of action." *Id.* at 230 (quoting *Borderlon*, 661 S.W.2d at 909).

Pham contends the law imposed on appellees, particularly on Womack and Carrier, duties of disclosure that obligated them, at the least, to make Pham aware that

16

Barfish had sold the bar to Carmack.[11]  For purposes of our consideration of this issue, we will assume Pham's contention is correct.  We will assume also that the sale of the bar gave rise to a cause of action by Pham against appellees, and that the record presents a fact issue whether appellees knowingly concealed from Pham the existence of the cause of action.

For the same reasons we have agreed with appellees and the trial court that Pham's individual fraud claim is barred as a matter of law, however, we find the fraudulent concealment doctrine cannot save his breach of contract or conversion claim.  In *Kerlin*, the court noted its previous holding that royalty owners "are not entitled to 'make no inquiry for years on end,' and then sue for contractual breaches that could have been discovered within the limitations period through the exercise of reasonable diligence."  263 S.W.3d at 925 (quoting *HECI Expl. Co. v. Neel,* 982 S.W.2d 881, 887-88 (Tex. 1998)).  The court further noted that HECI was a discovery rule case but nevertheless found its holding instructive in application of fraudulent concealment.  *Id.* at 925-26; *see Valdez*, 465 S.W.3d at 230 (citing *Kerlin*).  We find it instructive in this case as well.

For those reasons, we overrule Pham's fourth issue.

---

[11] In this Court, Pham contends appellees' duties of disclosure arose from provisions of the Business Organizations Code.  He cites sections 101.107, 101.255 and 101.356(c).  TEX. BUS. ORGS. CODE ANN. §§ 101.107, 101.255, 101.356(c) (West 2015).  Appellees deny those provisions imposed any duty of disclosure to Pham.  We need not address the issue.

Conclusion

In view of our disposition of Pham's issues one, three and four, we find it unnecessary to address his second issue. We affirm the trial court's take-nothing judgment as to Pham's individual claims for breach of contract, fraud and conversion. We affirm also the trial court's judgment on the claim Pham plead for conspiracy to defraud. We further note that as we perceive the summary judgment record, it is undisputed HMP Partners Management Inc. has no liability in this case. We affirm the trial court's grant of summary judgment as to HMP.

We reverse the trial court's judgment as to Pham's derivative claims and his claim for revocation of Barfish's termination, and remand those claims to the trial court for further proceedings.[12] *See Pinnacle Data Servs., Inc. v. Gillen,* 104 S.W.3d 188, 199 (Tex. App.—Texarkana 2003, no pet.) ("Where, as here, a final summary judgment has disposed of a case and included causes of action not addressed in the underlying motion, that judgment is erroneous and must be affirmed as to the causes of action properly adjudged and remanded as to those causes of action not addressed in the underlying motion.").

James T. Campbell
Justice

---

[12] Pham's pleading asserted justice requires that the court treat his derivative action as a direct action brought for Pham's own benefit and that any recovery be paid directly to him. *See* TEX. BUS. ORGS. CODE ANN. § 101.463 (West 2015). By this opinion and our judgment, we make no adjudication relating to that assertion.